```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| KATHARINE KELLY,<br><br>    Plaintiff,<br><br> v.<br><br>DMSC CONDO ASSOCIATION, INC.<br>and HEATHER C. HALUSKA, *a personal representative for the estate of Scott E. Haluska*,<br><br>    Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 14-4117 (JBS/KMW)<br><br>**MEMORANDUM OPINION** |

**SIMANDLE, Chief Judge:**

  While leaving her short-term beach rental in Stone Harbor, New Jersey, Plaintiff Katharine Kelly (hereinafter, "Plaintiff") suffered injuries after she slipped and fell on loose stones on the concrete apron of the all-stone driveway abutting the rental property.

  As a result of these injuries, Plaintiff brought a premises liability/negligence claim against the owners of the property, Defendants DMSC Condo Association, Inc. (hereinafter, "DMSC") and Heather C. Haluska (collectively, "Defendants"),[1] on the ground that Defendants caused and/or allowed the driveway to remain in a "highly defective condition" where it posed an

---

[1] Ms. Haluska owned the property with her now deceased husband, Scott E. Haluska. (Defs.' SMF at ¶ 4.)  Because the late Mr. Haluska and Mrs. Haluska play only a minor role in the facts of this litigation, the Court will, for the sake of simplicity, refer to them together as the "Haluskas."

"unreasonable risk of harm" to Plaintiff and others.  (Compl. at ¶¶ 19-28.)

Defendants now move for summary judgment, based upon their belief that the undisputed record demonstrates that they did not breach any legal duty owed to Plaintiff as a short-term lessee. (See generally Defs.' Br. at 5-12.)  Defendants claim, in particular, that the loose stones fail to qualify as an "unreasonably dangerous condition" and they submit, in any event, that Plaintiff used the property well aware of the condition of the stones.  (Id.)  Plaintiff, by contrast, gives little attention to Defendants' positions, and instead submits that the limited evidence in this case demonstrates "genuine issue[s]" for trial.  (Pl.'s Opp'n at 7-12.)

This case calls upon the Court to determine the duties owed by a lessor of rental property to a short-term lessee, and then to consider whether genuine issues of fact exist on whether Defendants breached those duties in relation to the loose driveway stones.

For the reasons that follow, Defendants' motion for summary judgment will be granted.[2]  The Court finds as follows:

   1.   **Factual and Procedural Background**.[3]  In early 2011, the

---

[2] The Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.
[3] The parties have compiled a remarkably brief factual record, which consists of little more than the deposition of Plaintiff.

Haluskas purchased a beach property in Stone Harbor, New Jersey, as primarily an investment. (See Defs.' SMF at ¶ 4; Pl.'s SMF at ¶ 4.) The property itself consists of two separate units, surrounded by a lawn and driveway made up of beige stones and an abutting concrete sidewalk and apron.[4] (See Defs.' SMF at ¶ 3; Pl.'s SMF at ¶ 3; Kelly Dep. at 21:6-24, 36:4-12.).)

2.   In order to manage the leasing of the property, the Haluskas entered into a "Rental-Listing Agreement" with Elizabeth A.B. Leahy of Coldwell Banker James C. Otton Real Estate (hereinafter, "Coldwell Banker"). (See Defs.' SMF at ¶ 5; Ex. C to Defs.' Br.) The "Rental-Listing Agreement," in turn, authorized Coldwell Banker (and its agents) to offer the property for rent, to enter into leases, and "to order emergency repairs and/or cleaning services for the property." (Ex. C to Defs.' Br.)

3.   Following a personal showing of the property, Plaintiff entered into a "**SHORT TERM LEASE**" (through Ms. Leahy) to rent the rear unit of the Haluskas' beach property for the

---

As a result, the Court derives the undisputed version of events primarily from the parties' statements of materials facts, and recounts them in the manner most favorable to Plaintiff. See generally L. CIV. R. 56.1(a). The Court disregards, as it must, those portions of the parties' statements that lack citation to relevant record evidence and/or contain improper legal argument or conclusions. (See, e.g., Defs.' SMF at ¶¶ 14-15, 17-18; Pl.'s SMF at ¶¶ 8-13, 16.)

[4] The stones themselves have been described only once, by Plaintiff in her deposition. (See Kelly Dep. at 21:13-18.)

week of June 23, 2012.[5] (Ex. A to Defs.' Br.; see also Kelly Dep. at 20:4-18.) During the first five days of her stay, Plaintiff (and her friends and family) enjoyed the unit without incident, and often walked upon the stone driveway. (See Kelly Dep. at 22:14-21.) Things changed, however, on the morning of June 28, 2012, when Plaintiff "parked on the curb" in front of the "lip" of the driveway, and began to "carry[] groceries" up the concrete apron and towards the entrance of the rear unit. (Kelly Dep. at 22:22-35:10.) As she walked upon the concrete apron a few feet from the street, Plaintiff felt several "stones moving" under her feet, causing her to fall down and "twist[] her ankle." (Id. at 23:14-17, 32:1-23, 37:17-23.)

4.  Following her fall, doctors at Cape May Regional Center treated her for a "fractured ankle" and applied a removable "soft" boot to stabilize her ankle. (Id. at 55:3-9, 58:17-59:3, 60:16-24.) Later, however, doctors performed a number of operations, and installed a "plate and six screws," in order to repair her broken ankle. (Id. at 61:2-62:15.)

5.  As a result of these injuries, Plaintiff filed this negligence action, alleging that Defendants failed to adequately

---

[5] Although this rental was Plaintiff's first in Stone Harbor, she had a series of stays in Stone Harbor and the "Jersey Shore" more generally (from periods both before and after the incident here), and testified to some familiarity with the prototypical "lawn" layout in the area (e.g., the stone driveways). (Kelly Dep. at 18:1-19:18, 21:19-24.)

4

discharge their duty to maintain sufficiently safe premises, by allowing unsafe, loose stones to accumulate "on the sidewalk/curb/driveway," "the only means of ingress and egress" of the property. (See generally Compl. at ¶¶ 20-24.) Following the conclusion of pretrial factual discovery,[6] the pending motion for summary judgment followed.

     6.   **Standard of Review**.  Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Alabama v. North Carolina, 560 U.S. 330, 344 (2010) (citations and internal quotation marks omitted); see also FED. R. CIV. P. 56(a).  In evaluating a motion for summary judgment, the Court must view the material facts in the light most favorable to the non-moving party, here Plaintiff Katharine Kelly, and make every reasonable inference in that party's favor.  See Scott v. Harris, 550 U.S. 372, 378 (2007); Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014).  An inference based upon "'speculation or conjecture,'" however, "'does not create a material factual dispute sufficient to defeat summary judgment.'"  Halsey, 750 F.3d at 287 (citations omitted).  Rather, the non-moving party must support each essential element with concrete record evidence.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23

---

[6] The parties conducted a lengthy period of pretrial discovery that concluded in June 2015.  [See Docket Items 8 & 9.]

5

(1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," the Court may grant summary judgment. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

    7.  **Lessor-Lessee Premises Liability Law, Generally**.  In order to sustain a common law cause of action in negligence, as alleged in this instance, a plaintiff must prove four core elements: "(1) a duty of care owed to plaintiff by defendant, (2) a breach of that duty by defendant, (3) proximate cause, and (4) actual damages." Meier v. D'Ambose, 17 A.3d 271, 274 (N.J. Super. Ct. App. Div. 2011) (citing Brunson v. Affinity Fed. Credit Union, 972 A.2d 1112, 1123 (N.J. 2009)), certif. denied, 17 A.3d 271 (N.J. 2011).  Here, however, the pending motion turns entirely upon whether Defendants owed a duty to Plaintiff, and breached that duty, relative to the loose stones.[7]  For that reason, the Court first defines the scope of the duty owed by Defendants to Plaintiff, their short-term tenant, and then turns to whether genuine questions remain on the issue of breach.

    8.  **Duty of a Lessor to a Lessee**.  Traditionally, New Jersey law predicated premises liability upon "the status of the person on the property at the time of the injury [as an]

---

[7] "The issues of whether a defendant owes a legal duty to another and the scope of that duty" amount to "questions of law for the court to decide." Robinson v. Vivirito, 86 A.3d 119, 124 (N.J. 2014) (citations omitted).

6

invitee, licensee, or trespasser." Rowe v. Mazel Thirty, LLC, 34 A.3d 1248, 1252 (N.J. 2012). These common law classifications, in turn, "established duties on a sliding scale; 'as the legal status of the visitor improve[d], the possessor of land owe[d] him more of an obligation of protection.'" See id. (citation omitted).

9. Despite this sliding-scale approach, common law historically immunized a landlord/lessor from liability caused by a dangerous condition after the lessee took possession. See, e.g., Szeles v. Vena, 729 A.2d 1064, 1067 (N.J. Super. Ct. App. Div. 1999) (citations omitted), certif. denied, 741 A.2d 97 (N.J. 1999). Over time, however, New Jersey courts "modified" this general rule (1) by imposing duties upon landlords to maintain reasonably safe premises and to discover defective conditions (even after occupancy), and (2) by making "a landlord liable in certain circumstances, consistent with the precepts of the Restatement (Second) of Torts." Szeles, 729 A.2d at 1067; accord Parks v. Rogers, 825 A.2d 1128, 1132 (N.J. 2003); Daggett v. Di Trani, 476 A.2d 809, 812 (N.J. Super. Ct. App. Div. 1984); Ellison v. Winteringham Assocs., L.P., No. A-1077-13T2, 2014 WL 8132002, at *5 (N.J. Super. Ct. App. Div. Mar. 17, 2015).

10. New Jersey courts have concluded, in particular, that the "duty a lessor owes a tenant in the particular context of a short-term vacation rental property ... should be defined

7

consistent with Section 358 of the Second Restatement of Torts." D'Alessandro v. Hartzel, 29 A.3d 1112, 1115 (N.J. Super. Ct. App. Div. 2011) (citing Reyes v. Egner, 962 A.2d 542, 552-55 (N.J. Super. Ct. App. Div. 2009) (emphasis added and citation omitted) (adopting and applying the Restatement standard), aff'd, 991 A.2d 216 (N.J. 2010)).  That provision, in turn, permits liability where the injured lessee demonstrates that the lessor failed to disclose a condition that involves an "unreasonable risk of physical harm to persons on the land," **and if**

> (a) the lessee does not know or have reason to know of the condition or the risk involved, **and**
>
> (b) the lessor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to expect that the lessee will not discover the condition or realize the risk.

Id. (emphasis added and citations omitted); see also Meier, 17 A.3d at 275-76 (reiterating the conclusion in Reyes).[8]

    11.  In other words, in order to defeat summary judgment, Plaintiff must demonstrate that there is admissible evidence from which a reasonable jury could find (1) that the loose stones posed an unreasonable risk of physical harm, (2) that she did not know and did not have reason to know of the condition or the risk involved, and (3) that Defendants had reason to expect

---

[8] No party disputes the fact that section 358 of the Second Restatement contains the relevant standard of care.  (See, e.g., Defs.' Br. at 6; Pl.'s Opp'n at 9.)

8

that she would not discover the condition or realize the risk. See, e.g., Muccia v. El Coronado Condo Ass'n, No. A-4114-11T4, 2013 WL 4554177, at *4 (N.J. Super. Ct. App. Div. Aug. 29, 2013) (discussing this three-part showing).  Measured against this standard, the limited record in this case falls far short of creating a genuine issue of material fact that a jury could reasonably resolve in Plaintiff's favor.  Nevertheless, the Court will address each of these aspects in turn.

    12.  **Unreasonable Risk of Harm**.  Critically, Plaintiff has, at the outset, offered no evidence (expert or otherwise) that the claimed condition—scattered small stones near an all-stone driveway—involves an unreasonable risk of physical harm to visitors.  To the contrary, Plaintiff testified that she and/or at least seven others safely and frequently traversed the concrete apron and stone driveway throughout their first five days on the property.[9]  (See, e.g., Kelly Dep. at 47:15-50:3, 53:8-19.)  Indeed, immediately prior to Plaintiff's accident, three people exited Plaintiff's car and carried groceries into the property across the same concrete apron as Plaintiff, but without incident.  (See, e.g., id. at 23:3-17.)

---

[9] Citing her deposition, Plaintiff claims in her brief that she "walked across the driveway apron," for the first time, on the date of the incident.  (Pl.'s Opp'n at 9 (citing Kelly Dep. at 37:9.)  The actual deposition testimony, however, supports no such position.  Indeed, Plaintiff only testified that she ordinarily "parked up on the driveway," and as a result, did not notice any stones on the driveway.  (Kelly Dep. at 37:4-12.)

9

13.   Beyond this, Plaintiff has offered no evidence (much less any argument) that the presence of loose driveway stones on the concrete driveway apron arguably violated, in some way, state or local statutes, regulations, or ordinances.[10]  Rather, Plaintiff argues in her briefing, but without pointing to any evidence, that the jury should be left to speculate as to the unreasonableness of the risk of harm posed by the loose stones to persons on Defendants' premises.[11]  (See, e.g., Pl.'s Opp'n at 9-10 (arguing, without support, that "[t]here exists a genuine issue of material fact as to whether the presence of the loose stones on the hard, concrete driveway apron posed an unreasonably risk of physical harm").)  Argument alone, however, falls far short of demonstrating a genuine issue of fact on the existence of an <u>unreasonably</u> risky condition, particularly here where no other of Plaintiff's numerous guests identified any issue.  For that reason alone, the Court finds summary judgment

---

[10] Such evidence would, in turn, have created at least a suggestion of an unreasonable harm.  See Reyes, 962 A.2d at 557-58.

[11] Indeed, New Jersey courts routinely rely upon expert evidence, and little more, in finding sufficient evidence to create a jury question whether a lessor-defendant should be held liable for a lessee-plaintiff's injuries.  See, e.g., Garber v. Haddon Hills Assocs., LLC, No. A-1659-11T2, 2012 WL 5969653, at *4 (N.J. Super. Ct. App. Div. Nov. 30, 2012) (reversing and remanding the grant of summary judgment in favor of the lessor-defendant, on account of expert evidence); Gutierrez v. Huntington, No. A-0965-10T2, 2011 WL 3476656, at *4 (N.J. Super. Ct. App. Div. Aug. 10, 2011) (same).  Here, however, Plaintiff has produced no such qualifying evidence.

in favor of Defendants warranted. See D'Alessandro, 29 A.3d at 1115 (affirming the grant of summary judgment where the plaintiff failed to offer any proof of a condition that "involved an unreasonable risk of physical harm to visitors").

14. **Plaintiff's Knowledge/Reason to Know**. However, even assuming a potentially dangerous condition existed, no reasonable jury could conclude that Plaintiff did not know and did not have reason to know of the loose stones. Indeed, prior to entering into the "**SHORT-TERM LEASE**," Plaintiff inspected the property, and testified to familiarity with its prototypical all-stone lawn/driveway and adjacent concrete apron. (See, e.g., Kelly Dep. at 21:6-22:3.) Plaintiff then acknowledged that she and/or members of her family routinely traversed the stone driveway and/or the concrete apron en route on various excursions. (See, e.g., Kelly Dep. at 47:15-50:3, 53:8-19.) Given these circumstances, these loose stones (or at least the possibility of loose stones) should have been readily apparent to Plaintiff during her initial visit and throughout the first five days of her stay. Indeed, the condition claimed here constitutes little more than a few loose stones that became dislodged from the large sea of stones that comprised the driveway/lawn of the property. In that way, common sense alone makes it imminently foreseeable to any visitor of the property that the small stones comprising the driveway and lawn of the

11

shore premises may find their way onto the concrete apron of the driveway.

  15.  Even more critically though, New Jersey law only imposes liability upon landlords for "not known, or reasonably discoverable" conditions. Donohue v. Polozzo, No. A-1853-08T3, 2009 WL 3762689, at *5 (N.J. Super. Ct. App. Div. Nov. 9, 2009) (citation omitted). As applied here, Defendants had no duty to warn Plaintiff of loose stones that rested indisputably in plain view, and that she and/or her guests would invariably have noticed throughout their various treks across the property. See id. (finding no duty to warn of an obvious condition, and affirming the grant of summary judgment). Beyond this, and even viewing the limited evidence in her favor, Plaintiff has produced no evidence nor even an explanation concerning why these open and obvious stones could not reasonably have been discovered (and thereby avoided). No reasonable jury could find that these stones were not known to Plaintiff or not reasonably discoverable by Plaintiff. For that reason too, the Court finds the entry of summary judgment in favor of Defendants appropriate. See, e.g., D'Alessandro, 29 A.3d at 1116 (affirming the entry of summary judgment, because the jury could not conclude that the plaintiff did not have reason to know of the condition); Ellison, 2014 WL 8132002, at *5 (finding that defendants owned no duty to warn of a "readily apparent"

12

condition); Muccia, 2013 WL 4554177, at *4 (same); Gokey v. Prokopy, No. A-1904-08T3, 2009 WL 3459983, at *5 (N.J. Super. Ct. App. Div. Oct. 21, 2009) (affirming the entry of summary judgment, because the jury could not conclude that the plaintiff "did not have 'reason to know' of the condition").

16. **Defendants' Reason to Expect**. Finally, upon this record, no jury could reasonably conclude that Defendants had no reason to expect that Plaintiff would not discover the loose stones—particularly because they remained, as explained above, obvious and in plain view on the walkway. Nor has Plaintiff proffered any evidence that Defendants should have realized the risks associated with the loose stones. Indeed, Plaintiff has identified no prior complaints about the stone lawn, nor did any of her other guests experience any issues. Based upon Plaintiff's failure to meet her burden of proofs on this question as well, the Court finds summary judgment for Defendants appropriate. See, e.g., D'Alessandro, 29 A.3d at 1116 (affirming the entry of summary judgment, because the record contained no evidence that "defendants had no reason to expect that plaintiff would not discover the [obvious] condition"); Ellison, 2014 WL 8132002, at *5 (same).

17. In sum, given the absence of any evidence that the stray driveway stones on the concrete driveway apron constituted a dangerous condition or otherwise involved an unreasonable risk

13

of physical harm, in addition to the uncontradicted evidence that Plaintiff had, in any event, reason to know of the loose stones because of their inevitable visibility, a jury could not reasonably find Defendants liable for breaching any legal duty owed Plaintiff.  For all of these reasons, Defendants' motion for summary judgment will be granted.

    18.   An accompanying Order will be entered.


 **December 16, 2015**             **s/ Jerome B. Simandle**
Date                                  JEROME B. SIMANDLE
                                       Chief U.S. District Judge